IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MICHAEL RODGERS                                                                                           PLAINTIFF

v.                                         Case No. 6:17-cv-06054

JASON STACHEY, in his Official
Capacity as Chief of the Hot Springs,
Arkansas Police Department                                                                            DEFENDANT

MEMORANDUM OPINION & ORDER

The City of Hot Springs, Arkansas has adopted an ordinance restricting communication by means of physical interaction between persons in public roadways within city limits. The ordinance distinguishes messages between pedestrians and vehicle occupants attempting to communicate and subjects these individuals to differential treatment. This Court now holds that the ordinance is a content-based regulation of speech that cannot survive strict scrutiny. Although the effort by the City to enact the ordinance does not meet constitutional requirements, the City is not to be criticized for its attempt protect the safety of its citizens and those who use the streets.

This matter is before the Court on a Motion for Summary Judgment filed by Plaintiff. ECF No. 31. Defendant has filed a Response in Opposition to Plaintiff's Motion (ECF. No. 34), and Plaintiff filed a Reply to Defendant's Response (ECF No. 39). Also, before the Court is Defendant's Motion for Summary Judgment (EDF No. 36), to which Plaintiff has filed a Response in Opposition (ECF No. 41), and Defendant has filed a Reply to Plaintiff's Response (ECF No. 42). This matter is ripe for the Court's consideration.

I.

BACKGROUND

Plaintiff, a beggar and panhandler (as described in his pleadings), is a disabled veteran who has "resorted to begging in order to have enough money to live on." Pl.'s Mot. Summ. J., Ex. 1, ECF 31-1. Plaintiff regularly begs within the city limits of Hot Springs, Arkansas (the "City" herein), and has been doing so for several years. He has previously been cited, arrested and put in jail by the Hot Springs Police Department for begging alongside public roadways within City limits.[1] He brings this constitutional challenge to an ordinance enacted by the City prohibiting physical interaction between the occupant of a motor vehicle and a pedestrian while the motor vehicle is in operation on a public roadway unless the vehicle is lawfully parked. HOT SPRINGS, ARK., Ordinance No. 6217 (Dec. 5, 2017) ("the Ordinance"). Alleging the Ordinance was crafted with discriminatory intent against beggars and panhandlers, and claiming the Ordinance abridges his First Amendment right to free speech and is unconstitutionally vague under the Fourteenth Amendment, Plaintiff filed suit under 42 U.S.C. § 1983 seeking declaratory judgment that the Ordinance violates the United States Constitution on its face and to permanently enjoin its enforcement. The named defendant is Jason Stachey in his official capacity as Chief of Police. Plaintiff alleges the Ordinance is unconstitutional because it criminalizes protected speech. Plaintiff claims he is chilled from freely exercising his right to protected speech due to concerns

---

[1] In addition to filing the instant case challenging the City's ordinances, Plaintiff previously filed suit in United States District Court for the Eastern District of Arkansas seeking to invalidate as unconstitutional Arkansas Code §5-71-213(a)(3)(1995) making it a crime to linger or remain "in a public place or on the premises of another person for the purpose of begging." *Rodgers, et al. v. Bryant*, No. 4:16CV-00775-BRW, 2016 WL 10591006 (E.D. Ark. Nov. 22, 2016)*(Rodgers I)*. In *Rodgers I* the Court the code section was held unconstitutional and Defendant was permanently enjoined from enforcement. Thereafter, the Arkansas General Assembly amended code §5-71-213(a)(3), defining the offense of "loitering" to include lingering in a public place for the purpose of asking for anything as charity under circumstances that create a traffic hazard or impediment. Plaintiff filed a second lawsuit seeking to invalidate the amended code section, and the District Court found the amended statute was an unconstitutional, content-based restriction not narrowly tailored to promote a compelling government interest. *Rodgers v. Bryant*, 301 F.Supp.3d 928, 933 (E.D.Ark. 2017) (*Rodgers II*).

about being warned, questioned, cited, arrested, jailed, prosecuted, found guilty and penalized by fines, penalties, imprisonment and court costs. Plaintiff also claims the Ordinance is unconstitutionally vague because the wording makes it unclear whether he is prohibited from begging on streets and roadways within City limits. Plaintiff seeks declaratory relief, monetary damages, and an award of Plaintiff's costs and attorneys' fees pursuant to 42 U.S.C. §1988. (Second Am. Compl., ECF No. 26.)

Plaintiff originally filed the complaint in this case seeking to invalidate a completely different City ordinance. On September 6, 2016, the City enacted "An Absolute Ban on Solicitation" making it a crime for a person to "enter upon a roadway, median, or portion of a public street, or otherwise approaching a vehicle located in any portion of a public street or roadway for the purpose of soliciting anything from the occupant of a vehicle.[2]" HOT SPRINGS, ARK.,

---

[2]ORDINANCE NO. 6168 AN ORDINANCE TO IMPOSE AN ABSOLUTE BAN ON THE SOLICITATION AND/OR DISTRIBUTION OF ANY ITEM WITHIN STREETS OR FROM MEDIANS LOCATED WITHIN STREETS, OR WHATEVER THE CLASSIFICATION, WITHIN THE CITY OF HOT SPRINGS, ARKANSAS; TO DECLARE AN EMERGENCY; AND FOR OTHER PURPOSES.

    **Whereas**, the City currently has regulations which address loitering, peddlers, solicitors, and canvassers, and,

    **Whereas,** the Board of Directors of the City of Hot Springs has expressed a desire to comply with all rights guaranteed to individuals by the First Amendment to the United States Constitution; and,

    **Whereas**, while this investigation is ongoing, the City has ceased enforcement of some of the provisions addressing loitering, peddlers, solicitors, and canvassers, and as a result, there has been an increase in the number of persons who solicit for contributions, donations, money. And other matters along various street within the City; and,

    **Whereas**, the persons who solicit these funds not only request assistance, but also walk from vehicle to vehicle, asking occupants to roll down their windows and to provide funds; and

    **Whereas**, such activity, as walking into traffic, provides a significant safety hazard to the persons who solicit the funds, as well as to drivers of vehicles who may not see the persons who are soliciting the funds, as well as to drivers of vehicles who may not see the persons who are soliciting the funds; and,

    **Whereas**, after review of studies from other municipalities, it has been determined that there is indeed a major safety hazard that the City has the ability to address with appropriate legislation;

    **NOW, THEREFORE, BE IT ORDAINED** by the Board of Directors of the City of Hot Springs, Arkansas, as follows:

    SECTION 1: No person shall sit, stand, walk or otherwise enter upon a roadway, median, or portion of a public street, or otherwise approach a vehicle located within any portion of a public street or roadway, for the purpose of distributing anything to the occupant of any vehicle.

    SECTION 2: No person shall sit, stand, walk, or otherwise enter upon a roadway, median, or portion of a public street, or otherwise approach a vehicle located within any portion of a public street or roadway, for the purpose of soliciting any item, including but not limited to money, from the occupant of any vehicle.

    SECTION 3: Exceptions. The provisions hereof shall not apply to any emergency personnel, road-side assistance, or towing and recovery personnel, in the performance of their official duties.

    SECTION 4: Penalty. Violation of this ordinance shall be subject to the penalties set forth in Hot Springs Code §1-1-15.

    SECTION 5: Repealer. All laws, ordinances, resolutions or parts of same that are inconsistent with the provisions of this ordinance are hereby repealed to the extent of such inconsistency.

Ordinance No. 6168 (Sept. 6, 2016) (Ordinance No. 6168 herein). Plaintiff was warned by a member of the Hot Springs Police Department that he would be taken to jail if he violated Ordinance No. 6168, and thereafter Plaintiff was afraid to beg within the City limits. (Pl's Mot. Summ. J, Ex. 1, ECF No. 31-1). On June 27, 2017, Plaintiff filed suit to invalidate Ordinance No. 6168 as unconstitutional. (Compl., ECF No. 1.) Plaintiff also filed a Motion for Preliminary Injunction seeking to prevent enforcement of the ordinance.[3] (Pl.'s Mot. Prelim. Inj., ECF No. 5.) In its Response to the Motion for Preliminary Injunction, the City notified the Court, "that it will not enforce the existing ordinance [No. 6168] at issue in this case pending a determination on the merits, or a resolution of this case by the parties." (Def.'s Resp. to Pl.'s Mot. Prelim. Inj. at 1, ECF No. 15.) Based upon this representation and finding no threat of irreparable harm to Plaintiff, the Court denied Plaintiff's Motion for Preliminary Injunction by order entered July 19, 2017 (ECF No. 17). Plaintiff thereafter resumed panhandling "freely in the city without fear." (Pl.'s Mot. Summ. J., Ex. 1, ECF 31-1).

A few months later, the City enacted "An Ordinance to Promote Public Safety Within the Roadways and Public Streets of The City of Hot Springs, Arkansas, and for Other Purposes." HOT SPRINGS, ARK., Ordinance No. 6217 (Dec. 5, 2017).[4] On December 18, 2017, Plaintiff filed a First

---

SECTION 6. Severability. In the event any title, section, paragraph, item, sentence, clause, phrase, or word of this ordinance is declared or adjudged to be invalid or unconstitutional, such declaration or adjudication shall not affect the remaining portions of the ordinance which shall remain in full force and effect as if the portion so declared or adjudged invalid or unconstitutional were not originally a part of the ordinance.
SECTION 7. Emergency Clause. The ability to maintain safe streets and roadways for pedestrian traffic when automobiles have the right of way is essential to the public health, safety, and welfare; the proliferation of persons and entities that use streets, walk between vehicles, stand on medians and approach vehicles has created a public safety hazard that must cease without violating the right to solicit donations and distribute materials on public property; an emergency is, therefore, declared to exist and this ordinance shall be in full force and effect from and after the date of its passage.
HOT SPRINGS, ARK., ORDINANCE NO. 6168 (Sept. 6, 2016).
[3] In his pleadings, Plaintiff refers to Ordinance No. 6168 by its codified designation, HOT SPRINGS, ARK., CODE §4-9-8 (2017 Supp.).
[4] ORDINANCE NO. 6217 AN ORDINANCE TO PROMOTE PUBLIC SAFETY WITHIN THE ROADWAYS AND PUBLIC STREETS OF THE CITY OF HOT SPRINGS, ARKANSAS; AND FOR OTHER PURPOSES.
 **Whereas**, the safety of pedestrians, motorists, and occupants of vehicles within the roadways, and streets of the city of Hot Springs is a compelling governmental interest; and

4

Amended and Substituted Complaint seeking to invalidate Ordinance No. 6217 as unconstitutional. (ECF No. 23.) A Second Amended and Substituted Complaint was filed on January 10, 2018 adding Todd Reid as a party plaintiff. (Sec. Am. Compl., ECF No. 26.) Reid identified himself as someone who "has given money to panhandlers while occupying a motor vehicle in operation on the public streets of Hot Springs." *Id*. at 3. Reid alleged that Ordinance No. 6217 chilled his First Amendment rights.[5] *Id*.

Ordinance 6217 went into effect January 5, 2018.[6] The City voluntarily agreed not to enforce Ordinance No. 6217 pending a final determination by this Court as to its validity. Plaintiff

---

**Whereas**, the City acknowledges and incorporates herein by reference the statistical data compiled by the U.S. Department of Transportation – National Highway Traffic Safety Administration (NHTSA) documenting the dangers associated with pedestrian interaction with vehicular traffic. https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811888; and
     **Whereas**, pedestrian traffic within the unauthorized portions of the roadways and streets of the City of Hot Springs creates a safety hazard for pedestrians, motorists, and occupants of vehicles.
     **NOW, THEREFORE, BE IT ORDAINED** by the Board of directors of the City of Hot Springs, Arkansas, as follows:
     **SECTION 1: Definitions:**
"Interact physically" means to make or attempt to make physical contact with a motor vehicle or other motorized vehicle, including but not limited to a motorcycle, or any object or occupant therein. "Interact physically" also means to make physical contract or attempt to make physical contact with a pedestrian or object in the possession of such a pedestrian by an occupant of a motor vehicle or motorized vehicle. For purposes of this ordinance, "interact physically" does not include the exercise of protected free speech or expression by any person.
A motor vehicle or motorized vehicle is "in operation" under this Ordinance where it is moving or has its engine engaged and is using a public roadway or street for travel and is not otherwise lawfully parked.
     **SECTION 2:** No person shall interact physically with an occupant of a motor vehicle that is in operation on a public roadway or street for any purpose.
     **SECTION 3:** No occupant of a motor vehicle or motorized vehicle t5hat is in operation on a public roadway or street shall interact physically with a pedestrian for any purpose.
     **SECTION 4: Exceptions.** This Ordinance shall have no application to the following:
     (a) Emergency personnel acting pursuant to their official duties;
     (b) Roadside assistance personnel acting pursuant to their official duties; or
     (c) Other life threatening emergencies requiring contact with the occupant of the vehicle of the vehicle itself.
     **SECTION 5:** Nothing herein shall preclude a pedestrian from using a public street as allowed by existing law including but not limited to Ark. Code Ann. §27-51-1201 *et seq*.
     **SECTION 6: Penalty.** Violation of this ordinance shall be subject to the penalties set forth in Hot Springs Code §1-1-15.
     **SECTION 7: Repealer.** All other ordinances, resolutions, or parts of same that are inconsistent with the provisions of this ordinance are also hereby repealed to the extent of such inconsistency.
     **SECTION 8: Severability.** In the event any title, section, paragraph, item, sentence, clause, phrase, or word of this ordinance is declared or adjudged to be invalid or unconstitutional, such declaration or adjudication shall not affect the remaining portions of the ordinance which shall remain in full force and effect as if the portion so declared or adjudged invalid or unconstitutional were not originally a part of the ordinance.
HOT SPRINGS, ARK., Ordinance No. 6217 (Dec. 5, 2017).
[5] An Order Granting Motion to Dismiss Party Todd Reid was granted on March 21, 2018. ECF No. 30.
[6] In pleadings, Plaintiff refers to Ordinance No. 6217 by its working title, 17-46.

5

wishes to continue to beg in Hot Springs, and he continues to do so while the ordinance is not being enforced. Plaintiff is afraid that if the ordinance is enforced in the future, his right to freedom of expression will again be chilled as he will fear harassment and punishment by the City. (Pl.'s Mot. Summ. J., Ex. 1, ECF No. 31.) No criminal charges are currently pending against Plaintiff in the City. *Id*.

II.

SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92

F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. "On cross-motions for summary judgment, the Court evaluates each motion independently to determine whether there exists a genuine dispute of material fact and whether each movant is entitled to judgment as a matter of law." *Animal Legal Defense Fund v. Reynolds*, 353 F.Supp.3d 812, 820 (S.D. Iowa 2019) (citing *Sam's Riverside, Inc. v. Intercon Sols., Inc.*, 790 F.Supp.2d 965, 975 (S.D. Iowa 2011)).

III.

DISCUSSION

**A. Whether Plaintiff has Standing to Facially Challenge the Ordinance**

To have standing under Article III, a plaintiff must have suffered an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted.) There also must be a causal connection between the injury and the defendant's conduct, and the injury must be redressable by a favorable decision. *Id*. at 561, 112 S.Ct. 2130. The Eighth Circuit has found standing to challenge a statute or an ordinance is present when the challenger has experienced a direct injury or will soon sustain a direct injury redressable by the court. *Harmon v. Kansas City*, 197 F.3d 321 (8th Cir. 1999). "A plaintiff need only establish that he would like to engage in arguably protected speech,

but that he is chilled from doing so by the existence of [a law preventing or restricting it.]" *281 Care Committee v. Arneson*, 766 F.3d 774, 780-82 (8th Cir. 2014).

The City does not submit evidence refuting Plaintiff's sworn statement that he has previously been questioned, warned, arrested, jailed, prosecuted, and convicted in Hot Springs for begging, or that Plaintiff was informed he would be taken to jail if he dared to violate City ordinances. There is no factual issue about whether Plaintiff fears future enforcement of the Ordinance, or whether the threat of future injury would be redressed by a favorable decision of this Court. The Court finds that Plaintiff has standing to bring this constitutional challenge to the Ordinance as it applies to his own activities.

Plaintiff seeks not only to vindicate his own rights as a pedestrian begging in the roadway, but also the rights other pedestrians and motorists and the occupants of motor vehicles whose First Amendment rights may be infringed by the Ordinance. The City argues Plaintiff lacks standing to assert the unconstitutionality of the Ordinance provisions applicable to occupants and drivers of vehicles in operation. "Ordinarily, a party may not facially challenge a law on the ground that it would be unconstitutional if applied to someone else." *Josephine Havlak Photographer, Inc. v. Village of Twin Oaks*, 864 F.3d 905, 911 (8th Cir. 2017) (quoting *SOB, Inc. v. Cty. of Benton*, 317 F.3d 856, 864 (8th Cir. 2003). However, in addition to finding some statutes unconstitutional as applied to the litigant, the Supreme Court has found other "statutes unconstitutional on their face because it was apparent that any attempt to enforce such legislation would create an unacceptable risk of the suppression of ideas." *Members of the City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796-97, 114 S.Ct. 2118, 80 L.Ed.2d 772 (1983). "Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face 'because it also threatens others not before the court – those who desire to engage in legally-protected expression but who may refrain from doing so

rather than risk prosecution or undertake to have the law declared partially invalid.'" *Bd. Of Airport Comm'rs of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503 (1985)). The doctrine may be applied in cases where the overbreadth of the ordinance affecting both conduct and pure speech is both "real" and "substantial" in relation to its "plainly legitimate sweep." *Havlak*, 864 F.3d, at 912. To find a statute substantially overbroad, the Court must find a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988) (quoting *Taxpayers for Vincent*, 466 U.S. 789, 798, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984)). "We generally do not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Havlak, supra.*

Plaintiff bears the burden to demonstrate he has standing to bring a facial overbreadth claim. *Havlak, id*. For such challenges, "the party before the court must identify a significant difference between his claim that the statute is [facially] invalid on overbreadth grounds, and his claim that it is unconstitutional as applied to his particular activity." *Id*. (quoting *Van Bergen v. Minn.*, 59 F.3d 1541, 1549 (8th Cir. 1995). "It is inappropriate to entertain a facial overbreadth challenge when the plaintiff fails to adduce any evidence that third parties will be affected in any manner differently from [himself]." *Id.*

Plaintiff describes numerous instances of arguable overbreadth, pointing out that Ordinance inhibits "any individual who physically interacts with a vehicle that has its engine on and who desires to speak to the occupant of that vehicle, including anyone asking or answering a question about directions; or hailing a ride from a taxi, Uber driver, or bus; or anyone seeking assistance from an occupant of a vehicle in operation; or anyone offering assistance, having been

asked for assistance from the occupant of a vehicle; or anyone walking toward an occupied vehicle in operation to get in the vehicle while talking to the driver, or anyone holding a political sign who walks toward a vehicle because the occupant has asked a question about the sign." Pl.'s Br. Supp. Mot. Summ. J. at 7 (ECF No. 32). The Court finds that Plaintiff has identified significant differences between his claim that the Ordinance is unconstitutional as applied to his particular activity of begging, and his claim that the Ordinance is facially invalid on overbreadth grounds. Accordingly, the Court finds the Plaintiff has standing to challenge the ordinance on grounds of facial overbreadth.

### B. The First Amendment Right to Free Speech

"At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence. Our political system and cultural life rest upon this ideal." *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 641, 114 S.Ct. 2445, 129 L.Ed. 2d 497 (1994). The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., Amdt.1. The clause applies to a government vested with state authority, including a municipal government, and makes clear that no government "has the power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.,* ____ U.S. _____, _____, 135 S.Ct. 2218, 2226, 192 L.Ed.2d 236 (2015) (citing *Police Dept. of Chicago v. Mosely*, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 305 (1992)). Laws that stifle speech on account of its message "pose the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information." *Turner, supra.* Content-based burdens on speech "raise the specter that the government may effectively drive certain ideas or viewpoints from the marketplace." *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 116, 112 S.Ct. 501, 116 L.Ed. 2d

476 (1991). "Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content." *Turner, supra*. In contrast, regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny. *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed. 2d 221 (1984).

### 1. Whether "Physical Interaction" is Constitutionally Protected Speech

The Ordinance defines what it means to "interact physically" and specifically states that it "does not include the exercise of protected free speech or expression by any person." Ordinance 6217 § (1). Plaintiff contends that his panhandling and begging activities constitute protected speech, and the City does not dispute this. Therefore, the Court finds that Plaintiff's begging is expressive activity protected by the First Amendment. See *Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) ("charitable appeals for funds…involve a variety of speech interests…that are within the protection of the First Amendment…"). This does not end the inquiry, however, because the Ordinance does not prohibit begging or solicitation or panhandling, it prohibits "physical interaction" between a pedestrian and the occupants of a motor vehicle in operation on the roadway when the vehicle is not legally parked.

The City asserts that Plaintiff and others are not prohibited from exercising their constitutional rights to speech in the public streets and roadways of the City, pointing out that the Ordinance does not target speech in any form and does not reference any type of protected First Amendment activity. Def's Resp. Mot. Summ. J. (ECF No. 34). The Ordinance does not prohibit any person from entering the roadway to speak, it only forbids them to interact with vehicles and pedestrians in ways that pose traffic safety concerns, regardless of whether they are speaking. Citing *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the

11

City argues that the First Amendment right to free speech does not include all conduct connected to speech. The Court interprets this argument to mean that "physical interaction" as it is defined in the Ordinance is not speech protected by the First Amendment.

The Court is unpersuaded by the City's effort to separate physical interaction from its expressive intent or message as a means of avoiding conflict with the First Amendment. While it is true that the right to free speech does not include all conduct that is connected to speech, when it comes to physical interaction between humans, the act itself is often both the message and the conduct. In many instances the two are so intertwined it is not possible to separate the speech and non-speech elements. All people everywhere routinely communicate non-verbal messages through physical interaction, often without even noticing it. It is visceral and instinctive, and it is often the quickest way to communicate. Messages conveyed through physical interaction include acknowledgment, support, contribution, charity, love, gratitude, agreement, acceptance, instruction, compliance, cooperation, inclusion, generosity, praise, disgust, aggression, sympathy, and sadness just to name a few. It matters not that the Ordinance does not prohibit with specificity the exact messages delivered through physical interaction. "[A] narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of Boston*, 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). Whether conduct is expressive is determined by looking to surrounding circumstances. *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235 (11th Cir. 2018) (context may be considered determining whether conduct should be viewed as conveying a message.) The Court can think of no reason why a pedestrian would intentionally attempt physical interaction with a motor vehicle or its occupants other than to communicate a message. Accordingly, the Court finds that interacting physically, as it is defined in Ordinance 6217, is a form of speech protected by the First Amendment.

## 2. What Level of Scrutiny Should be Applied?

Judicial precedent has established different levels of scrutiny for analyzing alleged First Amendment violations depending on where the speech takes place. *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45-46, 103 S.Ct. 948, 954-955, 74 L.Ed.2d 794 (1983). Traditional public fora are those places which "by long tradition or by government fiat have been devoted to assembly and debate." *Id*. Public streets and parks fall into this category. "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public, and time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." *Hague v. Committee for Indus. Organization*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed.2d 1423 (1939); *see also McCullen v. Coakley*, 573 U.S. 464, 478, 134 S.Ct. 2518, 189 L.Ed. 2d 502 (2014) (government's ability to restrict speech on public streets and sidewalks is "very limited"). Free expression in areas which have long been recognized as traditional public fora is subject to reasonable content-neutral restrictions on the time, place and manner of expression, while any content-based restriction will be upheld only if the government proves that it is narrowly tailored to serve a compelling state interest. *Perry, supra*.

Deciding whether a particular regulation is content-based or content-neutral is not always easy. The Court may be guided in its inquiry by determining whether the government has adopted a regulation of speech because of disagreement with the message it conveys, but "illicit intent is not the *sine qua non* of a violation of the First Amendment." *Simon & Schuster,* 502 U.S., at 117. "Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statures to suppress disfavored speech." *Reed v. Town of Gilbert, Ariz.*, 135 S.Ct., at 2229. It is not necessary that Plaintiff present

evidence of an improper motive on the part of the City in this case to prove the law is content-based on its face.[7]

"Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id*. Determining whether a regulation is content-based requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. *Id*. A regulation that appears content-neutral on its face may nevertheless be content-based if it cannot be "justified without reference to the content of the regulated speech." *Id*. (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed. 2d 661 (1989).

Legal precedent also recognizes that "[s]peech restrictions based on the identity of the speaker are all too often imply a means to control content."

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each.

*Citizens United v. Federal Election Com'n*, 558 U.S. 310, 340, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010); *see also Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) ("speakers can be excluded from a public forum only

---

[7] As the City denies improper motive, they create an issue of fact that would preclude summary judgment on this issue were the Plaintiff relying on such evidence.

when the exclusion is necessary to serve an compelling state interest and the exclusion is narrowly drawn to achieve that interest.")

The City submits that the Ordinance is merely a public safety ordinance that is content neutral on its face and does not regulate speech due to any disagreement with any person's message. The City also contends that the Ordinance is justified without reference to the content of any protected First Amendment activity.

This Court has ruled that physical interaction as defined in Ordinance No. 6217 is protected speech. The Ordinance distinguished physical interaction between certain persons within the roadway and singles them out for penalty, and one may identify violators of the Ordinance only by examining the content of the messages being transmitted. The content of the outlawed messages is physical interaction. The regulation to promote public safety within the roadways and public streets cannot be justified without reference to both the message (the physical interaction) and the speaker (a pedestrian or occupant of a motor vehicle). Verbal and written messages may be transmitted freely to the eyes and ears of everyone in the roadway without restriction, and not all physical interaction is prohibited in the roadway. Only messages of physical interaction between a pedestrian and a motor vehicle or its occupants in operation are prohibited. Thus, whether the restrictions are applicable depends entirely upon distinguishing the speaker and the communicative content of the speech. As Ordinance 6217 distinguishes between the content of different messages, the Court finds it is content-based and subject to constitutional strict scrutiny.

### C. Constitutional Strict Scrutiny

Laws that target speech based on its content, are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *Reed, id*. at 2232.

1. **Compelling State Interest**

It is undisputed that "[governmental authorities have the duty and responsibility to keep their streets open and available for movement." *Cox v. Louisiana*, 379 U.S. 536, 554-55, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) (citations omitted); *see also Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 650, 101 S.Ct. 2559, 60 L.Ed.2d 298 (1981). ("[A] State's interest in protecting the safety and convenience of persons using a public forum is a valid governmental objective.") The court finds that the City has shown a compelling state interest in promoting the roadway safety of pedestrians, motorists, and vehicle occupants.

2. **Narrowly Tailored**

The crux of this case lies in determining whether the Ordinance is narrowly tailored to meet the stated interests of addressing the safety hazard created by "pedestrian traffic within the unauthorized portions of the roadways and streets of the City." (Ordinance No. 6217.) The Ordinance does not "fit" because it is under-inclusive with respect to the protection of pedestrians within the unauthorized portions of a roadway or street. The Ordinance applies only to certain pedestrians, and yet no one is safe in a roadway no matter the reason for being there. Whether a pedestrian enters the roadway to interact with vehicles, perform road maintenance, cross the street, or engage in protected speech not involving physical interaction with anyone, the pedestrian is at significant risk of death or injury. The NHTSA report relied on by the City to support its compelling interest applies generally to "pedestrian safety" and is not limited to pedestrians intending to physically interact with motor vehicles in the roadway.[8] The report shows that roadways are inherently dangerous whether one intends to physically interact with a vehicle or not. Even those who observe safety precautions with the intent of avoiding contact with a motor

---

[8] See National Highway Traffic Safety Administration (NHTSA), Traffic Safety Facts Annual Report (2012).

16

vehicle are at risk of death or injury while in the street or roadway. By singling out only certain persons with certain types of messages, the City has fashioned a "fit" that is too small to cover its legitimate and compelling interest in promoting the safety of all pedestrians in unauthorized portions of the roadway.

The ordinance is also geographically over-inclusive. The Ordinance applies citywide, yet the City has introduced no evidence that "physical interaction" between pedestrians and vehicles presents the same level of risk to pedestrian safety on each and every street and roadway within the City limits. Because the burden rests on the City to submit evidence in support of its position, the Court cannot simply assume that all City streets and roadways are equally dangerous or present equal risks and hazards with regard to the safety of pedestrians and motorists. The blanket application of the Ordinance to all streets and roadways within the City limits substantially burdens more expressive conduct than is reasonably necessary to achieve its purpose.

**D. Intermediate Scrutiny**

Even if the Court were to find the Ordinance content-neutral, the Ordinance would not pass muster. Content-neutral regulations restricting the time, place and manner of expression are "valid provided that they are narrowly tailored to serve a significant governmental interest…" *Clark v. Community for Creative Non-Violence*, 468 U.S., at 294. Once the requirement of content-neutrality has been met, "[s]ymbolic expression . . . may be forbidden or regulated if the conduct itself may constitutionally be regulated, if the regulation is narrowly drawn to further a substantial governmental interest…" *Id*. (quoting *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968)). "The tailoring requirement does not simply guard against an impermissible desire to censor. Where certain speech is associated with particular problems, silencing the speech is sometimes the path of least resistance. But by demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily

17

'sacrific[ing] speech for efficiency.'" *McCullen*, 573 U.S., at 486 (quoting *Riley v. National Federation of Blind of N.C., Inc.*, 487 U.S. 781, 795, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988)). A content-neutral regulation "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id*.

In *Traditionalist American Knights of the Ku Klux Klan v. City of Desloge, Mo.*, 775 F.3d 969 (8th Cir. 2014), a case decided prior to the Supreme Court decision in *Reed v. Town of Gilbert, Ariz., supra.*, the Eighth Circuit considered whether a city ordinance prohibiting roadway distribution of literature to vehicle occupants, was narrowly tailored to serve the city's significant interests in pedestrian and traffic safety. The record on appeal contained, among other things, a report from a traffic consultant and affidavits from two traffic researchers. The city had amended its traffic ordinance by defining key terms and adding a preamble to explain the law's purpose to address "'public safety concerns,' specifically the risk that people soliciting or distributing materials with a roadway would distract drivers and 'result in the person in the roadway being struck by the vehicle during its operation, or the vehicle striking another vehicle or property in an effort to avoid the person in the roadway." *Id*., at 972. The amended ordinance allowed distribution to the occupant of a non-moving vehicle on the roadway adjacent to the sidewalk by someone standing on the sidewalk. The effect of this amendment was to permit distribution to vehicle occupants by persons standing on the sidewalk near some of the several stop signs in the city. The court concluded from the record that the ordinance was not substantially broader than necessary to achieve the government's interest, and that "the Desloge ordinance [was] narrowly tailored to serve its asserted interests, those being to prevent harm to pedestrians or to persons seeking to distribute materials to vehicles in the roadways while permitting distributions along the side of the roadways and at other locations in Desloge." *Id*., at 976.

The Desloge ordinance is distinguishable from the ordinance in the case at bar. The focus of the Desloge ordinance was limited to roadway distribution of literature to vehicle occupants, and the city produced evidence to show that its ordinance was enacted to address traffic safety concerns specific to distribution. In addition, the distribution of materials to vehicle occupants by persons standing outside of the roadway remained permissible at some of the stop signs within the city. In contrast, the preamble to Hot Springs Ordinance 6217 sets out a very broad general purpose stating that the Ordinance is designed to protect pedestrian safety in unauthorized portions of the roadways. Yet the restrictions in the Ordinance only apply to pedestrians and vehicle occupants attempting physical interaction. The NHTSA report relied upon by the City to support the relationship between the Ordinance and the City's stated interest speaks to pedestrian safety in general and does not document "the dangers associated with pedestrian interaction with vehicular traffic." Finally, Ordinance No. 6217 outlaws completely and makes no allowance for physical interaction between occupants of vehicles in operation and pedestrians anywhere within the City limits. Based upon these distinctions, the Court does not find *Desloge, id.,* is controlling authority on the issues in this case.

By restricting only physical interaction between pedestrians and the occupants of motor vehicles in unauthorized portions of all streets and roadways within City limits, the Ordinance does not serve to advance the stated goal of public safety for all pedestrians, motorists, and occupants of vehicles. In addition, and as noted above, there is no evidence showing that all City streets and roadways are equally dangerous. Without such evidence, the Court cannot assume the restriction is reasonably necessary to achieve the stated purpose of the Ordinance. Accordingly, even if the Court were to find the Ordinance content-neutral, the Ordinance is not narrowly tailored and cannot withstand constitutional scrutiny.

### E. Vagueness

As the Ordinance has been found to be facially unconstitutional, the Court declines to address the issue of vagueness.

### ORDER

For the reasons set forth hereinabove, the Court finds, as a matter of law, that Ordinance No. 6217 is a content-based regulation of speech that does not survive constitutional strict scrutiny. Accordingly, it is hereby ordered, adjudged and decreed as follows:

Defendant's Motion for Summary Judgment is DENIED;

Plaintiff's Motion for Summary Judgment is GRANTED;

Ordinance No. 6217 is unconstitutional on its face;

Defendant is and shall be permanently enjoined from enforcing Ordinance No. 6217.

IT IS SO ORDERED this 1st day of April 2019.

/s/ *Robert T. Dawson*
ROBERT T. DAWSON
SENIOR U.S. DISTRICT JUDGE